Decided at PENDLETON, July 20, 1895.

## MITCHELL v. TAYLOR.

[41 Pac. 119.]

1. ASSIGNABILITY OF OPTION — CONTRACTS.— A contract to repurchase stock, if a purchaser or his legal representatives so desire, is assignable by such purchaser before asserting his option: *House* v. *Jackson*, 24 Or. 99, cited and approved.

2. CONTRACTS — BREACH.— A contract to repurchase, at any of the stated dates of payment, stock that is to be paid for in installments by paying the sums paid, with interest, is not broken by refusal to repurchase after the purchaser has made default in an installment; the purchaser is entitled to a contract free from infirmities.

3. WAIVER — APPEAL.— Where a supplemental complaint, by alleging an acceptance of the assignment of a contract after commencement of the action, establishes a cause of action, and no exception is taken, the objection that no cause of action existed when the action was commenced cannot be urged on appeal.

APPEAL from Wasco: W. L. BRADSHAW, Judge.

The facts necessary for an understanding of this case are substantially as follows: On March twenty-fourth, eighteen hundred and ninety-two, the defendant O. D. Taylor, being the president of the Columbia River Fruit Company, and acting in its behalf, induced one D. B. Cornell to enter into a contract with the company containing, among other things, the following stipulations: "That said party of the first part (the company) has this day sold to the said party of the second part (D. B. Cornell) ten shares of the capital stock of said company for four hundred dollars per share, being the face value thereof, and amounting to four thousand dollars; and said party of the second part has agreed and does hereby

27 OR.—48.

agree to purchase and take said number of share ; f the capital stock of said party f the first part, and amounting to four thousand dollars, and to pay said sum therefor in installments as follows, to wit, one hundred dollars to be paid at the beginning of this contract for each share of stock hereby subscribed and taken by said party of the second part, and one hundred dollars annually thereafter for each share so subscribed by him until the full amount subscribed is paid. * * * Now, therefore, in consideration of the premises, and the subscribing of said stock and payment therefor by said party of the second part, it is hereby mutually understood and agreed that when said shares of stock shall have been fully paid for as hereinbefore set forth, then the party of the first part will issue to the party of the second part the number of shares of paid-up stock subscribed and taken by him in this contract." * * * As an inducement to enter into this contract with the company, the defendant made, executed, and delivered to Cornell the following agreement: "This writing witnesseth, that I, O. D. Taylor of The Dalles, Oregon, in consideration of the purchase by D. B. Cornell of Saginaw, Michigan (E. S.), of ten shares of stock in the Columbia River Fruit Company, paying therefor one thousand dollars in cash, and agreeing to pay one thousand dollars annually until the par value is paid, do hereby agree to repurchase said stock if said D. B. Cornell or his legal representatives so desire, at any of the stated dates of payment, and to pay therefor the sum or sums actually paid in cash by D. B. Cornell, with eight per centum annual interest on said sum so paid. O. D. Taylor." Cornell paid the first installment of one thousand dollars to the company at the time of entering into the agreement with it. The complaint, after reciting these facts, further alleges that on the first day of March, eighteen·hundred and ninety-

three, Cornell sold, assigned, and transferred to plaintiff
T. G. Mitchell all his right, title, and interest in and to
said stock and said agreement, and that plaintiff is now
the owner and holder thereof; that thereafter and on
March twenty-fourth, eighteen hundred and ninety-three,
plaintiff notified defendant of his desire to have defend-
ant repurchase said stock as by said agreement required,
but that defendant refused to comply therewith; and that
thereafter, on March twenty-fourth, eighteen hundred
and ninety-four, plaintiff duly sold and transferred in
writing to the defendant said stock and the agreement of
said Cornell to purchase the same, and delivered the
same to defendant, and demanded the payment of one
thousand dollars, being the sum paid by plaintiff upon
the agreement with the company, together with eight
per cent. per annum from March twenty-fourth, eighteen
hundred and ninety-two; but that defendant refused to
comply with his said request to repurchase the stock, or
to pay the one thousand dollars with interest, or any part
thereof; that plaintiff has fully performed on his part,
and that plaintiff holds said stock and agreement for
defendant at his disposal, and now brings the same into
court with a proper transfer to defendant. The prayer
is for one thousand dollars, and interest at eight per
cent. per annum from March twenty-fourth, eighteen
hundred and ninety-two. The answer puts in issue the
material allegations of the complaint, except that it ad-
mits the making of the Cornell agreement as claimed.

Thereafter, on the tenth of November, eighteen hun-
dred and ninety-four, plaintiff filed a supplemental com-
plaint, wherein it is alleged, "That heretofore, and on or
about the —— day of July, eighteen hundred and ninety-
four, and since the commencement of this action, the said
agreement mentioned in plaintiff's complaint, and entered
into by and between the Columbia River Fruit Company

and D. B. Cornell, and wherein said Cornell agreed to purchase, and said company to sell, certain stock in said company, as alleged in the complaint, being in the hands of the county clerk of this county, as brought into court in this cause, as set forth and shown in the complaint herein, the said defendant accepted and received the same with the transfers thereof to him, and has ever since and still does keep and retain the same, but neglects and refuses to pay the plaintiff the said sum of one thousand dollars as agreed, and which the said defendant promised and agreed to pay in his said written agreement mentioned in the complaint, or any part thereof." The answer to the supplemental complaint admits the taking of these documents from the clerk's office by defendant, but alleges that they were handed to him by the clerk of the court or his deputy, and that he took and received them without knowledge of what they were; that after keeping them some time he discovered that they purported to be the agreement between Cornell and the company and a transfer of the same from Mitchell to himself, and that thereupon he immediately returned them to the clerk; that he never accepted them, but only received them in ignorance of what they were. This new matter is denied by the reply. Under these pleadings the cause was tried before a jury.

At the trial plaintiff offered and the court admitted in evidence the two agreements aforesaid, an assignment thereof by Cornell to the plaintiff, a power of attorney from plaintiff to H. A. Hogue, authorizing him to "demand, receive, and collect the amount owing on the contracts mentioned in the foregoing assignment, and to make such transfer, assignment, or satisfaction thereof as may be necessary"; and an assignment by plaintiff to defendant of all his right, title, and interest "in and to a certain contract for purchase by D. B. Cornell of Sag-

inaw, (east side), Michigan, of ten shares of stock in the Columbia River Fruit Company of The Dalles, Oregon, which said contract was executed March twenty-fourth eighteen hundred and ninety-two," and assigned to plaintiff by Cornell March first, eighteen hundred and ninety-four. There was indorsed on this assignment in pencil: "Left for O. D. Taylor, by W. H. Wilson, May twenty-first, eighteen hundred and ninety-four." A. J. Rorick, a witness for plaintiff, testified, in substance, that, at the request of H. H. Hogue, and acting in behalf of the plaintiff, he went to the room of defendant at the Hotel Perkins, in Portland, on the twenty-fourth day of March, eighteen hundred and ninety-four, and found defendant there and with him ex-Attorney-General Geo. H. Williams, and in giving his version of the interview said: "I stated to Mr. Taylor that I was there to complete a transfer of some stock and an agreement that he had made, and that I had the papers with me, and this was one of the days mentioned for the transfer, and asked him if he desired to make it or was ready to do so. Mr. Williams stated that he was Mr. Taylor's attorney, and asked me to let him examine the papers, and said he would like to consult with Mr. Taylor, and that he would return his answer to me later, and we fixed upon one o'clock as the hour; I returned there at one o'clock and Mr. Williams * * * said in a jocose sort of a way that they had their war paint on, and that this was a part of some other matters, and, in the language of the poet, he would meet us 'at Phillippi,' and he turned over the papers to me, and I left." Judge Williams said they were not ready to pay the one thousand dollars. And, in answer to a question, the witness continued: "I was there under the contract to ask them if they were ready to pay the money as agreed, as named in the agreement. I stated that I was there as the agent of Mitchell, * * * pre-

pared to act for him, and showed these papers (four in number). Then Judge Williams asked me to turn them over to him." "When Mr. Taylor first asked me for them I said I wanted to know, of course, whether the papers would be returned to me or not, if he did not carry out the agreement. Judge Williams then said that he would pledge himself as Mr. Taylor's attorney to see that the papers were returned." "I did not expect to let him have them and get no money; of course not." "I merely left them with Judge Williams to obtain their answer, whether they would pay over the one thousand dollars." Q.—"You did not intend that the papers should go out of your possession permanently unless you got the money?" A.—"No, sir; * * * I intended and did demand the money, and stated that I was there to deliver the papers, * * * and stated my readiness to turn them over to him."

A. G. Johnson testified, in substance, that he had been deputy clerk since the first of July, eighteen hundred and ninety-four; that some time after he became deputy Taylor came into the office and inquired for some papers in another matter in which he was interested, and that, while hunting for the papers, Taylor stepped out of the office. Continuing his testimony, and referring to the Cornell papers, the witness further said: "I went to the safe and found these papers; I took them out of the safe, and went to the door and spoke to him. "Here," I said, "I see some papers that seem to have been left for you," and gave them to him in the hall in front of the office door. I told him that they were marked 'Left for O. D. Taylor by W. H. Wilson.' I think he asked me the question what they were. I just opened them, and said they seem to be something connected with the Columbia River Fruit Company. I think he said if they were his he would take them, or made some such remark as that."

The witness then relates that after having them out some time Taylor returned the papers at the time he swore to the supplemental answer, and had the same filed with the remark, "You remember now I returned those papers before I swore to that." This was Taylor's explanation attending the return of the papers to the deputy clerk. The papers were taken out some time during the summer, and returned November nineteenth, eighteen hundred and ninety-four. Other testimony was given, but the foregoing is the substance of all that is material for a full understanding of the questions involved. No proof was offered to show that on March twenty-fourth, eighteen hundred and ninety-three, plaintiff gave notice of his desire to have defendant repurchase, or that defendant refused to comply therewith. When plaintiff rested, defendant moved for a nonsuit, which was allowed, and judgment entered against plaintiff for costs, from which he appeals.                    REVERSED.

For appellant there was a brief and an oral argument by *Mr. William H. Wilson.*

For respondent there was a brief and an oral argument by *Mr. Alfred S. Bennett.*

Opinion by MR. JUSTICE WOLVERTON.

In support of the action of the court below the defendant submits several propositions, only three of which we are called upon to notice at this time, viz.: *first,* the agreement to repurchase upon which the action is based is, by the terms thereof, made conditional upon the personal desire, or at the option of Cornell or his legal representatives, and therefore not assignable; *second,* Cornell being in default with the Columbia River Fruit Company upon his contract therewith, could not compel the defend-

ant to repurchase it in its defaulted condition; and, *third,* plaintiff's remedy in a court of law, if he is in other respects entitled to recover, is for the damages which he has sustained by the breach of the contract, and the measure of damages is the difference between the true value of the property and the price agreed to be paid therefor.   Aside from these propositions, there is a question as to whether there is evidence in the record sufficient to carry the case to the jury.   Of these in their order.

1.   Defendant's counsel claims that, as Taylor agreed to repurchase this stock "if D. B. Cornell or his legal representatives so desire," he could not be compelled to repurchase if any one else besides Cornell or his legal representatives so desired, and hence that this contract, in so far as it stipulates for an option to require a repurchase of the stock on the part of Taylor, is not assignable.   The contention is that Taylor contracted for the personal act of Cornell, if living, or, if dead, of his legal representatives, and that none other will fill the measure of the agreement.   The criterion by which to determine the assignability of things in action is to ascertain what demands survive upon the decease of a party, and what die with him.   Those only which survive are assignable. Those that do not survive are: all torts to the person or character, when the injury and damage are confined to the body or the feelings, and generally, though not always, those implied contracts, the breach of which produces only direct injury and damage, bodily or mentally, to the person; and contracts, so long as they are executory, which stipulate solely for the special personal services, knowledge, and skill of a contracting party: Pomeroy's Code Remedies, § 147.   The reason why a contract for special personal services does not survive, and consequently is not assignable by the person obligating him-

self to perform the services, is that it is presumed the services were sought on account of the peculiar skill and fitness of the person employed to perform the particular work or task in hand.    There is here no peculiar fitness or skill required on the part of Cornell to assert a desire to have Taylor repurchase.    Indeed, Cornell is not required to perform any kind of service, nor is he required to enter into any personal obligation with Taylor as an act prerequisite to or concurrent with the demand for a repurchase of the stock.    Cornell is accorded a right under the contract, which he may assert or not at his option.    It is valuable to him as he might be able to better his condition by an exercise of it.    Whether he exercised the right personally or by an agent, directly or indirectly, could make no sort of difference to Taylor.    It could impose no additional burden upon him, nor change the contractual relations to his detriment in any material respect; so that the reason upon which the nonassignability of a contract for special personal services or skill is based does not exist here.    That an option is assignable in equity there is no longer any doubt: *House* v. *Jackson,* 24 Or. 99 (32 Pac. 1027); *Kerr* v. *Day,* 14 Pa. St. 112 (53 Am. Dec. 526).    It is said in *La Rue* v. *Groezinger,* 84 Cal. 289, (18 Am. St. Rep. 179, 24 Pac. 42,) that "An optional contract upon sufficient consideration is binding. And the mere fact that it is optional cannot be a reason why it should not be assigned."    We conclude, therefore, that the Cornell-Taylor contract was assignable by Cornell before asserting his option, and that he could thus transfer his interest therein together with any right of action arising thereunder to the plaintiff.

2.   It is next contended that Cornell was in default with the company at the time plaintiff asserted his option to have defendant repurchase, and that for this reason defendant could not be compelled to take the defaulted

27 OR.— 49.

contract off his hands.   This involves a consideration of
both contracts, and of their relations one to the other.
The execution by Cornell of the contract with the com-
pany was the sole and only consideration for the execu-
tion by Taylor of his contract with Cornell.   Hence it
must be presumed that Taylor contracted with reference
to the company contract, and had in view at the time the
rights accorded to Cornell by its terms and stipulations.
The company contract is not a sale of stock to Cornell,
but an agreement to sell and transfer a certain number
of shares in the future.   This is manifest from the fact
that the stock was not to issue until Cornell had fully
paid the stipulated price of four thousand dollars; so
that, instead of acquiring stock with which he could deal
directly, he merely obtained the obligation of the com-
pany to issue and transfer to him ten shares of stock in
the future.   The Taylor contract is, in substance: "I,
O. D. Taylor,   *   *   *   in consideration of the pur-
chase by D. B. Cornell   *   *   *   of ten shares of stock
in the Columbia River Fruit Company, paying therefor
one thousand dollars in cash, and agreeing to pay one
thousand dollars annually until the par value is paid, do
hereby agree to repurchase said stock, if D. B. Cornell
or his legal representatives so desire, at any of the stated
dates of payment, and to pay therefor the sum or sums
actually paid in cash by Cornell with eight per centum
annual interest on said sum so paid."   This latter was,
therefore, not a contract to repurchase stock of Cornell,
but a contract to purchase of him his right to obtain ten
shares of stock in the company acquired by virtue of his
contract therewith.   In effect, it is an agreement to take
Cornell's contract off his hands if he so desired.   If this
agreement is not capable of this construction it is *nudum
pactum*, and of no binding force or effect whatever.   The
ten shares of stock alluded to herein are the same which

Cornell contracted with the company for, and which it agrees to issue to him upon completion of his payments. The Taylor contract contemplates a purchase from Cornell before he (Cornell) can acquire the title, and even before the company is required to issue the stock; so that when his contract stipulates for the repurchase of stock it simply amounts to an agreement on Taylor's part to purchase of Cornell, at his option, at any one of several stated times, the company's agreement with Cornell, and thereby be placed in such position under the contract, that he, Taylor, may comply with the conditions thereof, and thus acquire the stock for himself. This construction seems reasonable in the light of the two contracts and the surrounding circumstances. The two contracts are incapable of being construed as parts of one as the parties to each are not the same; but the Taylor contract should be construed with reference to the conditions of the company contract, as the rights acquired under the latter constitute the subject matter of the former. Now, Cornell has undertaken, by the terms of the company contract, to pay four thousand dollars for the stock, as follows: "One hundred dollars to be paid at the signing of the contract (March twenty-fourth, eighteen hundred and ninety-two,) for each share of stock hereby subscribed and taken, * * * and one hundred dollars annually thereafter for each share so subscribed by him until the full amount subscribed is paid." He made the first payment of one thousand dollars as agreed, but no other payment has been made on said contract either by Cornell or plaintiff. After having defaulted in the payment of one thousand dollars, due March twenty-fourth, eighteen hundred and ninety-three, and at the date when the second deferred payment became due, (March twenty-fourth, eighteen hundred and ninety-four,) and without paying it, the plaintiff, the suc-

cessor in interest of Cornell, declared his desire to have
defendant "repurchase," and at the same time tendered
the stock contract with an assignment thereof to Taylor,
and demanded payment of one thousand dollars, with in-
terest at eight per cent. per annum from March twenty-
fourth, eighteen hundred and ninety-two.    Taylor re-
fused to comply with the demand, and, it is contended,
refused to accept the assigned company contract.    He
now claims that he was not compelled to take the com-
pany contract in its defaulted condition, and that it was
incumbent upon plaintiff to tender him a perfect one
that he could enforce without question.    The effect of a
failure to make payment of an installment of the pur-
chase price falling due at a stated time may or may not
preclude an action for breach thereof, and depends some-
what upon other facts and circumstances attending the
default.    If the breach is the result of accident or over-
sight, or is accompanied with facts and circumstances
inconsistent with an intention to abandon, and which in-
cline one to presume the buyer intended fully to perform,
then the failure to pay an installment at the agreed time
does not work a forfeiture of the whole contract, and by
a subsequent tender of the installment with further in-
stallments due he may claim the benefit of the sale:
Tiedeman on Sales, § 210; *Hime* v. *Klasey,* 9 Ill. App. 166;
*Winchester* v. *Newton,* 2 Allen, 492.    But if the acts of the
buyer in failing to comply with his agreement in making
payment of an installment indicate an intention to aban-
don the contract, as where the refusal to pay is wilful,
and not through inadvertence or accident, the contract is
thereby held to be forfeited, and the seller cannot be
compelled to perform.    So, a refusal to pay because of
one's pecuniary inability, if more or less continued, would
create a presumption that the purchaser intended to
abandon further performance: Tiedeman on Sales, § 210;

*Curtis* v. *Gibney,* 59 Md. 131; *Bradley* v. *King,* 44 Ill. 339; *Robson* v. *Bohn,* 27 Minn. 333 (7 N. W. 357). If this view of the law touching the effect of defaulted payments is correct, it is, to say the least, questionable whether the company contract could now be enforced against it, and would be a matter for the determination of a jury. It is apparent, therefore, that the contract tendered to Taylor was not free from infirmities, which infirmities are the result of plaintiff's failure to comply with its terms and stipulations. Taylor did not agree to accept such a contract of doubtful validity, and hence was not guilty of a breach of his contract with Cornell if he declined to accept and to repay the money with interest paid by Cornell on the company contract. Plaintiff should have tendered a contract unimpaired by any default on his part, before it was incumbent upon Taylor to accept, and without which plaintiff could have no action against Taylor. The foregoing conclusions render an examination of the third point unnecessary, as plaintiff cannot maintain an action in either case, whether upon the contract for the purchase price, or for breach thereof and for damages, unless Taylor has accepted the contract tendered with its infirmities, in which case he would be deemed to have waived the objection thereto arising from the default, and plaintiff's action for the agreed price would then be appropriate.

3.   We come now to the question whether the case should have been sent to the jury, and this must be determined under the pleadings as they come here, including the supplemental complaint, answer, and reply. It appears that the supplemental complaint, filed without objection, alleges an acceptance by Taylor subsequent to the commencement of the action, and, no exceptions having been taken to it either by demurrer, motion, or otherwise, it is now too late to make the objection for the first

time in this court, that no cause of action existed at the date of the commencement thereof: *Lowry* v. *Harris*, 12 Minn. 267; *Smith* v. *Smith*, 22 Kan. 702. The turning point in the trial was whether Taylor did or did not accept from plaintiff the company contract, and thereby become responsible to him for a repayment of the sum of money paid thereon with interest. We think there was evidence on this question which should have been allowed to go to the jury. The testimony of Johnson showing that Taylor took the assigned company contract from the clerk's office with knowledge of what it was, and retained it for a considerable length of time, had a tendency to support plaintiff's contention that Taylor did accept, and it was the province of the jury to say from this testimony, when taken in connection with Rorick's, whether he did or not. The court below was in error in granting the nonsuit, and its judgment is therefore reversed and a new trial ordered.

REVERSED.