[Civ. No. 1646.   Third Appellate District.—June 6, 1917.]

J. J. STAPP, Respondent, v. MADERA CANAL AND IRRIGATION COMPANY (a Corporation), Appellant.

ASSIGNMENT—CLAIMS FOR DAMAGES FROM FLOOD WATERS—SCOPE OF TRANSFER.—An assignment of claims for damages caused by flood waters from a dam and ditches of an irrigation company, on or about a stated date, to the property of the assignors, authorizes the assignee to recover for damages to the property from the negligence of the company in the construction, operation, or maintenance of the headgate to its main ditch, as it was not necessary, in order to pass title to the claim by assignment, to state or describe the particular act of omission causing the flood waters to leave their course, and so flood and damage the property of the assignors.

ID.—DAMAGES TO REAL PROPERTY—ASSIGNMENT OF CLAIM.—In view of the provisions of section 954 of the Civil Code, a claim for damages to real property may be assigned without assigning or transferring with the claim the title to, or the possession of, the property damaged.

ID.—ACTION FOR DAMAGES—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.— In this action for injuries to real and personal property from the

breaking of a dam of a canal company, it is held that the evidence is sufficient to sustain the findings that the dam was so constructed that the flash or retaining boards could not be approached during floods and removed to relieve pressure, and were not removed at the time of the flood in question, that the headgate in the main ditch was improperly and carelessly maintained, in that its timbers and foundations were permitted to deteriorate and rot, and that as a proximate consequence the gate could not withstand the pressure of the water impounded by the dam, and broke away, permitting greater quantities of water to flow into the irrigation ditches than they would carry, thereby causing them to overflow and injure the plaintiff's property.

ID.—CONSTRUCTION. OF DAM—GUARDING AGAINST FRESHETS—CARE.— The degree of care required to be exercised to prevent injury to person or property varies under different circumstances, and in the case of a person constructing a dam to impound waters for an irrigation system, if the stream is occasionally subject to great freshets, the same must be guarded against, and in doing so the measure of care required is that which a discreet person would use if the whole risk was his own.

ID.—CONSTRUCTION OF DWELLINGS IN COURSE OF OLD WATER-WAY— LACK OF CONTRIBUTORY NEGLIGENCE.—In such an action it cannot be contended that the injured persons were guilty of contributory negligence in constructing their dwellings in the bed of a natural water-way, when for more than fifty years no water had flowed therein, and that portion of the stream had apparently passed entirely out of existence, with no indications justifying or supporting the assumption that the stream would ever resume flowing therein.

ID.—CONSTRUCTION OF DWELLINGS IN CLOSE PROXIMITY TO CANAL— LACK OF CONTRIBUTORY NEGLIGENCE.—In such an action the injured persons cannot be held guilty of contributory negligence in erecting and maintaining their dwellings near and in line with the canal, knowing the dangers of overflow naturally attending the maintenance of such a canal.

ID.—FAILURE TO REMOVE PROPERTY TO PLACE OF SAFETY—SUDDEN PERIL—LACK OF CONTRIBUTORY NEGLIGENCE.—In such an action, the failure of an injured party who had time and opportunity to save his property from damage by flood waters cannot be urged against him, where he was awakened at midnight by a telephone call from a neighbor telling him of the breaking of the canal, and he, instead of removing his personal property to a place of safety, went to the homes of his neighbors and warned them of the flood.

ID.—ORAL LEASE OF REAL PROPERTY—KEEPING IN REPAIR—DAMAGES— RIGHT OF TENANT TO RECOVER.—A person in possession of real property under an oral contract that he might use the premises in

consideration of keeping the same in repair, is entitled to recover damages for injuries, which were capable of repair and ought to be repaired for the proper enjoyment of the premises.

APPEAL from a judgment of the Superior Court of Madera County.   W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Robert L. Hargrove, for Appellant.

Sherwood Green, for Respondent.

HART, J.—This is an action for damages to real and personal property of plaintiff and his assignors, eight in number. Since 1872, defendant and its predecessors and grantors have appropriated and diverted the waters of the Fresno River and have operated an irrigation system, its intake being situated in said river at a point about two miles northeast of the city of Madera.

The court found:

"1. That the defendant's dam across the Fresno River was so constructed that the flash or retaining boards could not be approached during floods and removed to relieve pressure; that defendant did not remove at this time or previous thereto or during the flood of January, 1914, the flash or retaining boards of the said dam, but permitted them to remain in place restraining the said flood water of said river and raising the same to a great height whereby great pressure was exerted on the headgate of the ditch leading out above the said dam.

"2. That the Fresno River is a torrential or flood stream.

"3. That the month of January is a time of year when floods might be expected.

"4. That the headgate in the main ditch was properly constructed, but was improperly, carelessly, and negligently maintained by the defendant in this, that the timbers of which said headgate was constructed and braced and the foundations thereof were permitted to deteriorate and rot and were allowed to weaken, and as a direct, natural, and proximate consequence the said gate could not and was unable to and did not withstand the pressure placed thereon by the water impounded by the defendant's dam across the Fresno River, whereby the said gate broke away on or about January 26,

1914, and permitted greater quantities of water to flow into the said ditches of the defendant than the said ditches would carry and that said ditches overflowed and flowed in and on the lands and personal property of the plaintiff and his assignors herein.

"5. That at the time of said break in said headgate and the said overflow J. J. Stapp was under a contract whereby he had the use of number 236 Vineyard Avenue in the city of Madera, California, for keeping it in repair; that the damage done to the aforedescribed real property by the said flood water coming from the said ditches of the defendant on to said property and the damage done to the personal property situate thereon was as follows:

```
"Real property ................        ·$62.50
 Personal Property:
     Hay .....................$30.00
     Barley .................  6.45
     Wood ..................  8.00
     Sewing-machine ...........  5.00
     Picture ..................  7.50
     Books ...................  36.00
     W. O. W. suit..............  17.00
Clothing ....................  20.00  129.95  $192.45.''
```

The damage suffered by each of the assignors of the plaintiff is then set out in similar form and it is found that their claims for damages were assigned to plaintiff before the commencement of the action. It is then found that said damage was not the result of extraordinary and unprecedented storms, nor the result of contributory negligence by plaintiff or his assignors, "but resulted solely from the negligence of the defendant in the maintenance of defendant's headgate across its main canal.

"10. That at one time the land whereon the plaintiff and all the assignors of plaintiff (excepting Charles W. Kolb, B. Kleckner, and J. N. Kast) reside was a river-bed of the Fresno River, but that no water has flowed from the river therein for a period of more than fifty years until the time of the break . . . and plaintiff and his assignors were not negligent in building in said slough.

"11. That none of the waters flowing from the Fresno River into the said former river-bed or slough caused any of the

damage . . . but that all of said damage was caused by water from the defendant's canals."

The judgment was in favor of the plaintiff for the sum of $913.90 and costs and the appeal by defendant is from the judgment.

We will first notice appellant's fifth point, which is: "That the assignment to plaintiff, for collection, of the claims of damages of said assignors against defendant for damages . . . relates wholly to the flood waters from its dam . . . and does not include or cover any damages done by reason of any negligence of defendant in the construction, operation, or maintenance of said headgate. That said assignment was not coupled with any interest in the property damages and is insufficient and invalid."

The assignment reads as follows: "This agreement made this 11th day of Jan. 1915, witnesseth that the undersigned parties hereby assign to J. J. Stapp all their claim against the Madera Canal and Irrigation Co. arising out of the damage caused by flood waters from the dam and ditches of the said company, caused on or about the 26th day of January, 1914, to either real or personal property of the said undersigned assignors respectively, said assignment being made for the purpose of collection of the said claims and includes full power to bring any legal action necessary, to prosecute the same in the name of the assignee, and to take any steps whatsoever which may be necessary for the collection and enforcement of the said claims." Signed by plaintiff and eight others.

There is absolutely no merit to this point. The assignors laid claim for damages arising at a particular time and directly from a particular cause—that is, from the flood waters flowing from the dam and the ditch of the defendant. It was not necessary, in order to pass title to such claim by assignment, to state or describe in the assignment the particular act of omission causing the flood waters from the dam and the ditch to leave their course and so flood and damage the property of the assignors. This proposition is no different from a case where a merchant should assign to B a claim against C arising from a sale by the merchant to C of a bill of merchandise. To make the assignment good in law, it would not be necessary that the assignment should contain an itemized or detailed statement showing the specific kinds of merchan-

dise which made up the account from which the assigned claim arose. If the validity of the assignment rested upon a showing therein of how the claim came into existence, the mere general statement that it was for merchandise would obviously be sufficient. So here. It was sufficient to show, as the assignment here does show, that the claim arose out of damage which was directly caused by the negligence of the defendant, but, as stated, it was not necessary, as is true in pleadings, to describe in the document transferring the claim how or in what particular with reference to the maintenance of the dam and ditch such negligence occurred or, in other words, what particular part of the dam or ditch was so negligently maintained or attended to as to have produced the damage complained of.

The objection to the assignment secondly stated, viz.: That claims for damages to real property cannot be assigned without also assigning or transferring with the claim the title to or the possession of the property damaged, is also untenable.

Section 954 of the Civil Code provides: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except where, in the cases provided in the Code of Civil Procedure, it passes to his devisees or successor in office."

The above section, as is manifest, effected a change in the common-law rule of the nonassignability of choses in action based upon damages arising out of torts, and the rule in this state and in other states now appears to be that such claims may be assigned, without at the same time assigning an interest in the property damaged. Indeed, the code section cannot with reason be construed to have any other meaning. It clearly provides that two distinct classes of claims may be transferred—the one arising out of *the violation of a right of property,* which is this case, and the other arising out of an obligation or a contract. The cases have so construed the language of said section. (See *Mitchell* v. *Taylor,* 27 Or. 377, [41 Pac. 119] ; *Erickson* v. *Brookings Co.,* 3 S. D. 434, [18 L. R. A. 347, 53 N. W. 857] ; *Norfolk & W. R. Co.* v. *Read,* 87 Va. 185, [12 S. E. 395] ; *Jordan* v. *Welch,* 61 Wash. 569, [112 Pac. 657] ; *Slauson* v. *Schwabacher Bros.,* 4 Wash. 783, [31 Am. St. Rep. 948, 31 Pac. 329] ; *Zabriskie* v. *Smith,* 13 N. Y. 322, [64 Am. Dec. 554] ; *Caledonian Ins. Co.* v. *Northern Pac. Ry. Co.,* 32 Mont. 46, [79 Pac. 544].) In the states in

which these cases were decided, the code section is exactly in the language of our section 954, *supra.*

Of course, a distinction is to be drawn between claims arising out of damage to property and those arising out of personal injuries or damage to the person, and it has been said that the criterion by which the assignability of things in action may be determined is whether the claim or demand survives upon the decease of the party or dies with him. "If all things in action are separated into two classes by this line of division," say the cases cited in Kerr's Civil Code under section 954, "those embraced in the first class are assignable, and those which fall into the second class are not. In the first class may be put claims arising from a breach of contract; those arising from torts directly to real or personal property; and frauds, deceits and other wrongs by which estate, real or personal, is injured, diminished or damaged. In the second class are all torts to person or character, when injury and damage are confined to the body or feelings of the person injured."

The authorities cited by the appellant are cases which deal with the question whether claims arising out of torts were assignable under the law as it existed prior to the enactment, in 1872, of section 954 of the Civil Code, and obviously they are not in point here, inasmuch as in this state the rule in respect of the assignability of choses in action down to the enactment of said section was the common-law rule.

There was ample support in the testimony for the findings.

R. L. Hargrove, local manager of the defendant corporation, described the dam or weir across the river, used for impounding and diverting water to the canals, by means of a headgate. The top of this weir was seven or eight feet above the bed of the river, and the company maintained in it a sufficient number of boards to divert the maximum amount of water to which it was entitled. If it were desired to remove any of these boards, it was necessary to walk out on a pathway which extended across the river parallel to the weir and was on the lower or downstream side thereof, and was about one foot below the level of the top of the weir when the boards were all in place. During times of flood water, the surplus water going over the dam would cover this footpath so that it could not be used, and the boards could not be removed, except that, at the time of the flood concerned herein, one board was re-

moved by men standing on the bank, but none of the others could be pulled out in that way. This testimony was sufficient to sustain the first finding of the court.

As the dam across the river withstood the flood waters, and none of the boards, except the one above mentioned, was removed, the water sought the place of least resistance and found it in the headgate used for diverting the water into the canal. Several witnesses testified regarding the condition of the timbers of which the headgate was composed. Harry Barnes, defendant's engineer, said that at the time of the flood the material in the headgate was obviously defective, because if it were not, the gate "would stand up." C. P. Jensen, an expert witness for defendant, made a similar statement. P. M. Stafford, another engineer, who went to work on the county bridge at the time of the break, said that he found rotten timbers floating there and that, in his opinion, they were the cause of the flood. H. W. Brashear, a carpenter, corroborated this testimony. W. A. Brown, defendant's general superintendent, said that the standards at the headgate were "some rotten." Frank Clare, another engineer, three days after the flood, saw a post that came from the gate and said "it was somewhat decayed and the nail holes had rotted." John Kast also said the timbers were rotten.

Appellant's position is that the headgate was properly constructed, that each year it was inspected and necessary repairs made and that "defendant had no notice or knowledge that there were any defects in said headgate, or the timbers thereof."

In view of the fact that the timbers had been placed in the headgate in 1906, and that they had been wet and dry for seven years, it seems rather surprising that the witness, Schmidt, who testified that he inspected and repaired the headgate every year, should declare that he found no rotten timbers, even though he stuck his knife in them to see if they were sound. Superintendent Brown said he had charge of repairs to the headgate; that he made an examination each year; that he "just looked it over"; that he had a hammer or something of that kind but did not make a scientific test; that he never ran a knife alongside the nails to see if they would hold, but he said he could generally tell if a stick was rotten without sticking a knife into it. He said he went over the gate carefully and repaired it in August before the break.

The degree of care required to be exercised to prevent injury to person or property varies under different circumstances. "The rule of care," which is "ordinary or reasonable care," as stated in 1 Thompson on Negligence, section 707, "may be discharged by slight attention in some cases, and it may require the most exacting and unremitting attention, care and skill in others."

In an early case in this state (*Hoffman* v. *Tuolumne County Water Co.*, 10 Cal. 413) the following quotation is made from Angell on Watercourses, section 336: "The degree of care which a party who constructs a dam across a stream of water is bound to use, is in proportion to the extent of the injury which will be likely to result to third persons, provided it should prove insufficient. It is not enough that the dam is sufficient to resist ordinary floods; for if the stream is occasionally subject to great freshets, those must likewise be guarded against; and the measure of care required in such cases is that which a discreet person would use if the whole risk were his own."

"No one is responsible for the act of God, or inevitable accident. But when human agency is combined with it, and neglect occurs in the employment of such agency, liability for damage results." (*Chidester* v. *Consolidated Ditch Co.*, 59 Cal. 197.)

"Negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence." (*Wahlgren* v. *Market St. Ry. Co.*, 132 Cal. 656, [62 Pac. 308, 64 Pac. 993].)

Under these authorities, and many others that might be cited, and the testimony, of which the above is a brief statement, we think the court was justified in reaching the conclusions which are crystallized in the first four findings of fact.

But it is contended by the defendant that the plaintiff and his assignors were guilty of contributory negligence, which was the proximate cause of the damage suffered by them.

As the court found, the evidence showed that the land upon which the plaintiff and some of his assignors resided was at one time a part of the bed of the Fresno River. But the evidence disclosed and, as we have above shown, the court found that, until the time at which the break in the canal complained

of here occurred, no water from the said river had flowed in or over said land for a period of over fifty years.

The several forms in which it is claimed that the plaintiff and his assignors were themselves guilty of negligence directly contributing to the damage of which they complain in this action are these: 1. That it was contributory negligence to construct dwelling-houses in the bed of a natural water-way; 2. That, having erected their houses in close proximity to the canal with knowledge of the existence and location of said canal, and with notice, from the very nature of the purpose for which the canal was to be used, that it was liable to break at any time, it was the duty of the plaintiff and his assignors to protect themselves and property against such a contingency, and having failed so to protect their property or to safeguard it against damage which would probably follow the breaking of the canal or dam, they thus were guilty of contributory negligence; 3. That the plaintiff, Stapp, had the time and opportunity to have saved certain of his personal property damaged by the waters from the canal, but that he negligently failed to do so, and thus contributed to the injury of which he complains.

The answer to the first proposition of contributory negligence is in the finding, sustained by the undisputed evidence, that for a period of more than fifty years prior to the time of the break which caused the damage complained of in this case no water had flowed in or over the land upon which the plaintiff and his assignors resided, that portion of the stream known as the "Fresno River" having apparently passed entirely out of existence, with no indications justifying or supporting the assumption that the stream would resume flowing therein or thereon.

To the second proposition, to wit, that the plaintiff and his assignors erected and maintained their dwelling-houses near and in line with the canal, knowing the dangers naturally attending the maintenance of a water ditch, were themselves thus guilty of negligence which contributed to the damage, a conclusive answer is to be found in the following observations of the supreme court, in *Judson* v. *Giant Powder Co.,* 107 Cal. 549, [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020]: "It is argued that the explosion of all powder-works is a mere matter of time; that such explosions are necessarily contemplated by everyone who builds beside such works, or who brings

dynamite into his dooryard.  It is further contended that appellant gave to respondents actual notice of the dangerous character of its business by a previous explosion, which damaged respondents' property, and that respondents, by still continuing in business after such notice, in a degree assumed and ratified the risk, and cannot now be heard to complain. *The only element of strength in this line of argument is its originality.*  The contention that in the ordinary course of events all powder factories explode, conceding such to be the fact, presents an element foreign to the case.  The doctrine of fatalism is not here involved.  In the ordinary course of events the time for this explosion had not arrived, and appellant had no legal right to hasten that event by its negligent acts.''

As to the asserted contributory negligence of the plaintiff, Stapp, in failing to remove his goods to a place of safety upon hearing of the breaking of the dam, we cannot upon the record say that the point is well taken.  Stapp testified that the break occurred at midnight and that he was awakened by a telephone call from a neighbor, telling him of the break, that he immediately arose, dressed himself and, with a lighted lantern, went to his barn, into which the water had already flowed to the depth of four or five inches.  He thereupon immediately rushed to the homes of some of his neighbors, whose houses were in line with the direction in which the water would naturally run, warning them of the coming flood.  He then returned to his own home, found that the water about his premises had reached a depth of over two feet and thereupon, by means of horses and wagon, he proceeded to remove his family to a place of safety.  Some of the goods damaged by the flood were in a shed near the barn and some—hay, barley, etc.—in the barn.  He stated, during the course of his examination, that he believed it to be his first duty to wake up and warn his neighbors of the danger to which they were exposed from the flood.

In *Schneider* v. *Market St. Ry. Co.*, 134 Cal. 482, 490, [66 Pac. 734], the following rule, announced in Shearman and Redfield on Negligence, section 89, is approved and applied: ''In cases where a party is suddenly put in a position of peril by the negligent act of another, without sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an unwise choice, under this disturbing influence, although if his mind had been clear, he ought to

have done otherwise. This is especially true if the peril is caused by the defendant's fault.''

The principle thus stated is, we think, applicable to the case of the plaintiff here, as shown by his testimony. Suddenly awakened at midnight from his sleep, and told of perils by which his family and his property were beset by reason of the giving way of a water ditch and the rushing of the flood waters upon and over and thus submerging his premises, it is not to be supposed that he or any other person, suddenly enveloped by such appalling circumstances, would be in a condition of mind to exercise the best judgment, or to do those acts and things which perhaps he could and ought to have done to save his property from damage. We, therefore, cannot say, as a matter of law, that the plaintiff failed to exercise such care as men of prudence usually exercise when their property is in a position of like exposure and danger and of which danger they are apprised under circumstances analogous to those under which the plaintiff was given information of the peril to which his property was exposed.

Certain rulings upon the evidence admitted and excluded, and to which exceptions were reserved, are complained of. Of these but one appears to merit special attention.

It was made to appear by the evidence, as the court found, that the plaintiff had possession of the premises on which he resided and which were owned by his mother-in-law, under a contract with the latter that he might use the same in consideration of keeping them in repair. When the plaintiff was about to give testimony relative to the damage to a certain part of the real property—a cesspool—which was susceptible to being repaired, objection thereto was made by the defendant on the ground that he (the plaintiff) was not the owner of the real property and, therefore, not entitled to recover damages for any injury inflicted thereon by the breaking of the dam. The testimony was admitted and, we think, properly so, since the obligation rested upon the plaintiff to repair at his own expense the cesspool. It is true that the evidence showed that his contract for the use of the premises was not in writing, but this is not, so far as the question before us is concerned, a matter of material importance. His contract, which, in legal effect, amounted to a lease of the property, was a valid one for the lease of the premises for at least a period of one year, and his agreement to keep the property in repair involved a

consideration which was to be performed not at any particular time during the term but whenever the exigency of the situation might require it. And, having this obligation to perform, he would, of course, become an injured and interested party whenever the premises suffered damage which was capable of being repaired and ought to be repaired for the proper maintenance and enjoyment of the same. But the question of the validity of the lease was not one to be raised by the defendant in this case. It could only arise between the parties to the lease, and then only when the rights of the parties as lessor and lessee were challenged in any way. If the parties to an oral lease of real property are satisfied to allow such lease to continue for more than a year or indefinitely under the conditions upon which the lease was made, it is their own affair, with which others are not authorized to interfere, and it is no legal defense for a third party who has injured the leasehold to set up the plea against the claim of damage by the lessee that the lease is invalid because it is not in writing.

We have with care examined the numerous other assignments under this head, and have thus been convinced that they do not disclose rulings whose effect was to prejudice the rights of the defendant.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 4, 1917.