99 298
103 269

99 298
[104 140

99 298
105 539

99 298
106 266

## D. W. BABB *vs.* THE OXFORD PAPER COMPANY.

### Oxford. Opinion November 28, 1904.

*Injury to Employee. Pleading. Amendment. Evidence. Photographs.*
*Assumption of Risk. Contributory Negligence.*

The defendant operated a coal conveyer, which consisted in part of an endless chain of buckets which passed up through the roof, over an ash hopper on the roof, and then down through openings in the roof and floors below. The buckets sometimes carried ashes, cinders and clinkers from the boiler room to the roof, where they were automatically tripped and emptied their contents into the ash hopper. The plaintiff was a servant of the defendant. He was stationed on the first floor of the building, and his duty was to watch the descending line of buckets, to see that they were right side up, and were clean and free from cinders and clinkers. He claims that while he was at his work, standing within a few inches of the descending buckets, with his head bent slightly forward perhaps, he was hit by a piece of coal, or clinker, or frozen ashes, which fell from the ash hopper above, down through the openings in the roof and the next floor above his, and which struck him on the head with such violence as to stun him and cause him to fall in such a way as to be injured.

1. In the original declaration the only allegation of negligence was "that the said ash box or receptacle became filled and said defendant corporation negligently and carelessly failed and neglected to have said ash box and receptacle, so that the boxes or buckets failed to properly unload in said ash box or receptacle and ashes and clinkers were carried out and fell over the edge of said ash box or receptacle and fell through the openings through which the said coal carrier descended." *Held;* that an amendment setting forth in a new count "that the opening or aperture in the second floor of the carrier room building and the opening or aperture in the roof of said building through which the said coal conveyer descended was larger than necessary for the passage of said conveyer, and were dangerous, hazardous and unsafe, because of the unguarded spaces thus left, all of which dangerous, hazardous and unsafe conditions were due to the carelessness and negligence of the said defendants" did not introduce a new cause of action and was properly allowed.

2. Photographs, to be admissible as evidence, should simply show conditions existing at the time in question. When taken with men in various assumed postures, and things in various assumed situations, in order to illustrate the claims and contentions of the parties, they should not be admitted.

3. When one enters into the service of another, by virtue of the employment, he assumes the risk of all obvious and apparent dangers which are

incident to the business, and of all which, one of his age, capacity and experience, by the exercise of reasonable care, ought to know and appreciate; also of all dangers, of which he knows, and which he should appreciate, whether obvious and visibly apparent or not.

4. The case shows that the plaintiff knew and appreciated the likelihood that ashes and clinkers would come down from the hopper in the operation of the coal conveyer; and though he had notified his foreman of the danger, and had been promised that it should be remedied, he was apprised by falling ashes, not five minutes before the accident, that the hopper was again running over. Nevertheless, knowing that the hopper was full, and that material was likely to come down, he did not exercise reasonable care on his own part, in the presence of a known danger, in placing himself in its track; and this was contributory negligence, and bars recovery.

5. This conclusion, based entirely upon the plaintiff's own testimony, is so indisputable that the presiding justice might properly have directed a verdict for the defendant.

Motion and exceptions by defendant.

Exceptions overruled. Motion sustained.

Action for personal injuries sustained by the plaintiff while in the employ of the defendant corporation. The verdict was for the plaintiff in the sum of $2750. Before opening his case to the jury the plaintiff asked leave to amend his declaration by adding a second count thereto. Defendant objected but the amendment was allowed. In opening its case to the jury the defendant attempted to use as chalks certain photographs to illustrate its theory, as to how the accident happened. The plaintiff objected and the court excluded the photographs and would not allow them to be used as chalks. To these rulings the defendant excepted, and also after verdict, filed a general motion for a new trial.

Further facts appear in the opinion.

*A. E. Stearns and J. M. Libby,* for plaintiff.

*George D. Bisbee and Ralph T. Parker,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J. The defendant company, at the time of the injury complained of, was operating what is called a "coal conveyer," in a building especially prepared for its use. The conveyer itself con-

sisted of two endless chains parallel with each other, running over and propelled by sprocket wheels. Between the chains were hung at regular intervals iron buckets, nineteen inches long, sixteen and one half inches wide and seven inches deep. The buckets at each end were attached to the chains by swivels, so that they could easily be turned over. When the conveyer was in operation, the chains, moved by the sprocket wheels, carried the buckets along their endless course. Beginning say at the top of the building and above the roof, the endless chain of buckets descended perpendicularly through openings in the roof and floor below about fifty feet to a point just beneath the first floor, where it turned upon a sprocket wheel and proceeded horizontally beneath a coal hopper to the boiler room, then turned underneath another sprocket wheel, and was returned horizontally and again perpendicularly to the top of the building through the roof, and over sprocket wheels to the point of beginning. On the top of the roof of the building, but underneath the chain of buckets, was an ash hopper, made so that its contents could be discharged through a chute into a railroad car standing upon a trestle outside the building. When the conveyer was being operated, the buckets took coal from the coal hopper, as they were passing horizontally towards the boiler room. On reaching the boiler room they were overturned in their passage by an automatic tripper, and the coal was dumped. Sometimes, but not always, on their return passage they were filled with ashes, cinders or slag, by workmen with shovels. They then carried their contents to the top of the building, where they were tipped by another automatic tripper, and the contents dumped into the ash hopper. At times the ashes and cinders in the boiler room were not taken up to the ash hopper in this way, but were taken out of the boiler room in wheelbarrows and hauled away by teams.

The plaintiff was a servant of the defendant and his place of work was in a room on the first floor of the building, between the two lines of buckets. That is to say, as he worked the descending line of buckets was in front of him, and the ascending line was several feet behind him. His duty was to watch the descending buckets, to see that they were right side up, so as to take the coal when they reached

the coal hopper, and to see that they were clean, free from cinders and clinkers or other things which might clog their movements, and prevent their turning freely on their swivels.    Between the side of the conveyer and the wall of the building was a hole into the pit below. This hole was rectangular, twenty-seven inches by twenty-five inches, and its sides were formed, roughly speaking, by the edge of the floor on the near side, and a bar of iron on the farther side, and the ends of course were marked by the conveyer itself and the wall.    The sprocket wheel upon which the conveyer turned just beneath the floor was situated at the edge of this hole, but below the level of the floor.

The plaintiff says that while he was at work standing within a few inches of the descending buckets, with his head bent slightly forward perhaps, some object which he claims was a piece of coal, or clinker, or frozen ashes, fell from the ash hopper above, down through the openings in the roof and the next floor below, which were made for the passage of the descending buckets, and struck him so violently upon the head as to stun him, and to cause him to fall forward into the hole spoken of in such a way as to get his foot caught between the chain and the sprocket wheel, causing the injuries for which he now seeks to recover.

The case comes up on the defendant's exceptions and motion. The first exception relates to the allowance of an amendment to the plaintiff's declaration by adding a new count.    In the original declaration the only allegation of negligence on the part of the defendant was in these words: "that on said ninth day of January the said ash box or receptacle became filled and said defendant corporation negligently and carelessly failed and neglected to have said ash box or receptacle, [emptied?] so that the boxes or buckets failed to properly unload in said ash box or receptacle and ashes and clinkers were carried out and fell out over the edge of said ash box or receptacle and fell through the openings through which the said coal carrier descended."    The plaintiff however was permitted, against objection, to amend by setting forth in a new count, "that the opening or aperture in the second floor of the crusher room building and the opening or aperture in the roof of said building through which said coal

conveyer descended were larger than necessary for the passage of said conveyer, and were dangerous, hazardous and unsafe, because of the unguarded open spaces thus left, all of which dangerous, hazardous and unsafe conditions were due to the carelessness and negligence of the said defendant." The other allegations of negligence in this count are repetitions in substance of allegations in the first count.

We think the amendment was properly allowed. It does not introduce a new cause of action. It merely added an additional description of the conditions which might make the defendant's operation of the ash hopper negligent. The failure to empty the hoppers is still the principal thing. The size of the openings, or in other words the opportunity for coal and clinkers to fall through them from an over loaded hopper affect merely the question of negligence in allowing the hopper to get and remain over loaded. The allowance of such an amendment was within the discretion of the presiding justice. *Chapman* v. *Nobleboro*, 76 Maine, 427.

In the course of the trial, the defendant offered as evidence certain photographs of the conveyer and the room in which the plaintiff worked, which were excluded and exceptions were taken. The admission of photographs lies largely within the discretion of the presiding justice. He must first be satisfied that the photograph is sufficiently verified, that it is fairly representative of the object portrayed, and that it may be useful to the jury. His determination upon these points is not subject to exceptions. *Jameson* v. *Weld*, 93 Maine, 345. To be admissible, photographs should simply show conditions existing at the time in question. But photographs taken to show more than this, with men in various assumed postures, and things in various assumed situations, in order to illustrate the claims and contentions of the parties, should not be admitted. An examination of the excluded photographs shows that they fall within the latter class. They would serve merely to illustrate certain theories of the defendant as to how the accident happened. They were properly excluded as a matter of law. The defendant therefore can take nothing by its exceptions.

Under the motion, we find it necessary to consider only one point. The parties are in serious controversy as to how the accident hap-

pened, and as to the condition of the hopper, whether filled or not at the time. There is indeed some difficulty in understanding how the plaintiff could possibly have been injured by getting his foot caught between the chain and the wheel, if he was hit as he says he was, while standing on the floor in front of the conveyer. But passing that, and assuming but not deciding, that allowing the ash hopper to become so loaded as to overrun was negligence in the master, and not merely negligence in a fellow servant charged with the operation of the conveyer, still there is a ground, which we think, on the plaintiff's own testimony, will forbid his recovery in this action.

It is well established law, reiterated in hundreds of decisions, that when one enters into the service of another, by virtue of the employment, he assumes the risk of all obvious and apparent dangers which are incident to the business, and of all which, by the exercise of reasonable care, one of his age, capacity and experience ought to know and appreciate. He also assumes the risk of all dangers, of which he knows and which he should appreciate, whether obvious and visibly apparent or not. So far as concerns the condition of things in the room where the plaintiff worked there is no controversy. That the hole existed into which the plaintiff says he fell, that it was unguarded, that the chain wound under the sprocket wheel by the edge of the hole, that there was some danger in working near the conveyer and hole,—all these are not denied. On the other hand all these conditions were admittedly obvious to, and known by, the plaintiff. So far as concerns risk or danger from the falling of coal, cinders or clinkers from the ash hopper above, the plaintiff's case must be judged from his own testimony. On direct examination he was asked if he had ever been troubled while working there on the buckets by the falling down from above of ashes and cinders and other materials. He answered:

A. Yes sir, fine ashes and cinders was coming down. It would come down sometimes as often as [once?] a week, and then again there wouldn't be any for two weeks.

Q. At any time before this accident occurred had you known of large stuff coming down?

A.  Not very often; sometimes pieces would come down; I didn't see any serious trouble with it.

Q.  Large pieces did fall sometimes?.

A.  Well there was as big as a hen's egg.

Q.  Have you ever seen larger pieces than that fall down through there?

A. ˙ Well, once in awhile there would be larger pieces fall down through.

There is no testimony as to the size of the object that hit the plaintiff, but Hicks, one of the plaintiff's witnesses, testified that the new coal was put through a crusher, before taken by the conveyer to the boiler room, and that after being crushed it varied in size from "stove" coal up to "egg" coal, "but not very often would you find a piece as big as that, about like stove coal on an average." The same witness testified that the way workmen below would know when the ash hopper was full was that then it "would begin to overflow and would begin to come down through."

It does not, then, in view of the plaintiff's testimony, seem possible to doubt that he well knew that in the operation of the conveyer, pieces of coal or cinders or clinkers could, and frequently did, fall down through the openings above him.  And that he knew that they came from the ash hopper, of the condition of which he now complains, is evident from his testimony that he told McLeod, his foreman, a week before the accident, that "ashes and cinders and things" were coming down from above, and that he wanted him "to clean out the ash box so that it wouldn't fall down."  If this was all so, how can it be said that the plaintiff did not know and ought not to have appreciated the danger of standing at his work so near to the buckets as to be liable to be hit by objects falling from above?  We think he must have known and appreciated.

But the plaintiff seeks to avert this conclusion by saying that he notified the defendant of the dangerous condition, and was assured that it should be remedied, and relying upon the doctrine stated in *Dempsey* v. *Sawyer*, 95 Maine, 295, he contends that he thereby released himself from the assumption of that risk, and that it was thrown back upon the defendant.  To this contention there are at

least two answers.  First, he did not notify the defendant.  He did notify that servant of the defendant who had general charge of the conveyer house and the machinery and appliances there, and who might therefore stand for the defendant.  He notified only his fore-man, McLeod, who was his fellow servant in the operation of the conveyer, and whose neglect to perform any duty which he owed in respect to the operation of the conveyer and ash hopper would be the negligence of a fellow servant.  Secondly, after the notification to McLeod, and about five minutes before the accident, the plaintiff says that the ashes began coming down again, and he so far appreci-ated the situation that he sent a man "to tell McLeod to clear the ash hopper so that it wouldn't sift ashes down onto me and get down my neck."  The plaintiff then understood the situation to be what he now complains of, that the ash hopper was full and running over.  He could not have helped understanding that if there were coals or clinkers in the ashes, they were liable to fall over and come down.  He must have understood that the dangerous condition of which he had complained to McLeod and of which he now complains, existed at that moment.  Common prudence should have suggested that it was dangerous to stand where his head was liable to be hit by an object falling from the hopper.  It was not necessary for him to so expose himself.  He frequently, so he says, "righted" the buckets, or cleaned them, with a stick, standing or sitting two or three feet away.  Knowing, as he believed, that the hopper was full, and that material was likely to come down, he did not exercise reasonable care on his own part, in the presence of a known danger, in placing himself in its track.  He was guilty of contributory negligence, and that bars a recovery.

This conclusion seems to us so indisputable that we think the pre-siding justice might properly have directed a verdict for the defend-ant.  The verdict being clearly wrong, it must be set aside.

*Exceptions overruled.  Motion for a new trial sustained.*