[Civ. No. 2196.   Third Appellate District.—September 20, 1920.]

## J. M. COFFMAN, Respondent, v. BOOJA SINGH, Appellant.

[1] NEGLIGENCE—PLEADING — CONTRIBUTORY NEGLIGENCE — THEORY OF TRIAL—APPEAL.—Where an action for personal injuries is tried without objection on the theory that the defense of contributory negligence was pleaded and relied upon by the defendant, the plaintiff will not for the first time on appeal be permitted to urge the objection that the defense was not properly or at all set up in the answer.

[2] ID.—INSUFFICIENT PLEA OF CONTRIBUTORY NEGLIGENCE.—A plea alleging that plaintiff was injured by his own negligence, or by his own negligence and not by any negligence of defendant, is not a sufficient plea of contributory negligence.

[3] ID.—INJURY FROM PASSING AUTOMOBILE—REPAIR OF TRUCK ON HIGHWAY—SUFFICIENCY OF EVIDENCE.—In this action for personal injuries received by the plaintiff from being struck by a passing automobile while standing on the ground and engaged in working on the carbureter of his own motor truck, the evidence is held to be of such a character as to forbid the conclusion, as a matter of law, that the verdict does not derive sufficient support therefrom.

[4] ID.—SUDDEN PERIL—EXCUSABLE ACTS.—Where a party is suddenly put in a position of peril by the negligent act of another, without sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an unwise choice, although if his mind had been clear he ought to have done otherwise.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Brown & Albery for Appellant.

Charles B. Harris and Ralph H. Lewis for Respondent.

HART, J.—This is an action for personal injuries. The plaintiff was given a verdict, and from the judgment thereupon entered the defendant appeals.

The point for which a reversal of the judgment is demanded is that the proximate cause of the accident by which the plaintiff received the injuries of which he complains was his contributory negligence. In this connection, we may with propriety consider the respondent's contention that the defendant's answer does not set up contributory negligence as a defense to the action, and that the question of the plaintiff's contributory negligence is raised for the first time on this appeal. In reply to the contention, the defendant insists that the answer does sufficiently plead contributory negligence on the part of the plaintiff, and that, in any event, the case having been without objection tried upon the theory that such defense was pleaded and relied upon by the defendant, the respondent will not now for the first time be permitted to urge the objection that the defense of contributory negligence was not properly or at all set up in the answer.

[1] We think the position of the plaintiff upon the proposition is sound. The "further and separate defense" set up in the answer does no more than to charge that the accident, and its consequences were due wholly and entirely to the negligence of the plaintiff, it being therein further alleged that the defendant, at the time the collision occurred, was driving his machine in a careful and prudent manner, and that the injuries to plaintiff were not caused by any negligence on his part in the operation of his machine. These allegations could have been proved under the specific denials of the answer, and it is, therefore, clear that they do not involve or set up the plea of contributory negligence. [2] "A plea alleging that plaintiff was injured by his own

negligence, or by his own negligence and not by any negligence of defendant, is not a sufficient plea of contributory negligence. Indeed, it is not a plea of contributory negligence at all, for the law, where contributory negligence exists, presupposes the negligence of defendant, and a plea of this nature denies it.'' (29 Cyc. 583, and footnote cases; *Ramp* v. *Metropolitan St. R. Co.*, 133 Mo. App. 700, [114 S. W. 59, 61].) But, it seems, the case was tried below upon the hypothesis that the defense of contributory negligence was sufficiently set up by the defendant, or at least an issue in the case. Indeed, the plaintiff himself at the trial appeared to have taken that view of the defendant's pleading, for the court read to the jury, at his request, the following instruction: ''In this case, the defendant has set up the defense of contributory negligence. You are instructed that the burden of proving contributory negligence is on the defendant and that he must show by a preponderance of evidence that the plaintiff failed to use such care as a person of common prudence usually exercises under like circumstances.'' Moreover, evidence was received without objection upon the theory that the element of contributory negligence was in the case. It is well settled that, where an issue, not made by the pleadings, is, without objection, made by the evidence, the cause being tried in the court below by both parties upon the theory that such issue is properly in the case, an objection for the first time on appeal that no such issue was made by the pleadings will not be of any avail to the objecting party. This rule is elementary in California, for which reason cases need not be cited in confirmation of its restatement herein. But the proposition is of little, if any, consequence now, in view of the verdict arrived at and the conclusion we have reached upon the question whether it is supported by the evidence. The defendant was permitted to introduce evidence in support of all of the allegations of his answer, and if he did so upon the theory that he had pleaded contributory negligence the result merely was that thus he not only conceded his own negligence but took upon himself a greater burden than his answer required of him, since contributory negligence is a special defense, the support of which by a preponderance of the evidence always rests upon the defendant or the party setting it up, while under the general issue or the mere specific denials of the

averments of the complaint all that the defendant is required to do is to overcome the effect of the evidence introduced in support of the complaint so that the preponderance of the evidence will not be on the side of plaintiff. At all events, the important question presented here is whether there is disclosed by the record sufficient evidential support to the verdict and the judgment, and upon this proposition we have reached the conclusion, after a careful review thereof, that the evidence is such as that the question whether it afforded justification for the result arrived at below was one for the sole determination of the jury; or, stating the proposition in a different form, we find the evidence as it is presented to us to be such as to preclude this court from holding, as a matter of law, that the verdict does not derive sufficient support therefrom.

The accident resulting in the injuries to plaintiff occurred between the hours of 12 and 1 o'clock P. M., on the twenty-first day of November, 1918, on a road running between the city of Colusa and the town of Maxwell, in Colusa County, at a point on said road about nine miles from the first-named place. The defendant was at the time of the accident returning to his farm from Colusa, where he had gone to employ an engineer to run a tractor engine. He secured the services of a man by the name of E. W. Clement, who was an automobile driver of considerable experience, and who was operating the machine when the accident happened. A Hindu by the name of Khan was sitting in the front seat by the side of Clement and the defendant in the back seat. The plaintiff was driving a motor-truck and was going west or in the same direction in which the defendant was traveling. The plaintiff, previously to the appearance of the defendant's machine at the point where the accident occurred, had stopped his truck to adjust the carbureter, which had on the way been giving him trouble. At the place where the plaintiff stopped to adjust his carbureter the road was graded above the surface of the ground from two to four feet. In the construction of this grade, a pit was left on each side of the road, the same being filled with water. The road was considerably cut up and thus put in bad condition by the use thereon of heavy trucks with which rice had been hauled from place to place. The north half of the road at the point where the plaintiff stopped his truck was wet

and soft and so seriously cut up that it was regarded as unsafe for a vehicle of any kind, particularly an automobile or a heavy truck, to pass over it. That portion of the road south of the center thereof was in fairly good condition and it was in that portion of the highway that the plaintiff stopped his truck for the purpose above explained. To adjust his carbureter, the plaintiff removed the portion of the hood on the left-hand side of the engine of the truck, which, as seen, was on the south side of the road, pointing west. The hood of the truck is made up of three pieces, a top piece and one on each of the sides. Plaintiff had placed the piece of the hood which he had removed from the truck on the ground south of the truck and between the truck and the pit on the south side of the road. While the plaintiff was engaged in working on his carbureter, the defendant approached in his automobile, accompanied by the two men above named traveling toward the west. They kept the machine in which they were riding in the good portion of the road down to the time they approached the spot where the plaintiff was working on his truck and as they came near the truck they drove to the left hand or south side thereof, that being, as seen, the only good or safe place in the road where they could pass the truck. In thus passing the truck, the defendant's machine struck the plaintiff's right leg, breaking it in such manner as to have seriously and permanently crippled him.

The plaintiff, who was at the time of the accident accompanied by a young man named Tennant, testified that he stopped his truck on the south side of the road because he could not have pulled over to the north side without getting "stuck," that portion of the road being wet and soft and the soil there of the adobe quality; that the south side had straw on it and that there was more room on that side for him to work in on his carbureter than there was on the north side. "Naturally," he continued "I went down there [south side], as my trouble was on the south side of the car —the carbureter on the left side of the car—and that left me on the south side to work. . . . I was working on the car and I saw a machine right in behind the truck and I reached over to pick up the hood to get it out of the way, and I was hit by the machine. . . . The hood was right by the side of me—a little behind me. . . . When I first noticed the ma-

chine coming it was four or six feet in behind the truck.
. . . It did just miss the hind end [of the truck] about six
inches, I guess, and the front end, why I suppose about two
feet, something like that. . . . I did not hear any warning
given. . . . There was none given." On cross-examination,
the plaintiff stated that at the time the machine reached him
his body was "right up against the truck," and that he was
facing north when he was working on the carbureter.
Young Tennant, he said, had just left the seat of the truck
and was standing near the seat when the defendant's ma-
chine approached near the truck. Tennant, on seeing the
approaching machine, jumped up on the running-board of
the truck at about the same instant of time that the plaintiff
reached for the hood, and this act of Tennant was done as
the defendant's machine "just started to come around the
hind end of the truck." Further cross-examination of
plaintiff: "Q. How long was the truck? A. Oh, about
twenty feet, the whole thing. Q. So that he was something
like twenty feet away when you first saw— A. (Int.) Oh,
about twenty-four or twenty-six feet. That is hardly ex-
actly. Q. Just making an estimate, you are giving an esti-
mate, are you? A. Yes, sir. Q. And what did you first
do when you saw the car coming? A. Reached down to get
this tin hood *and I got it out of the way and straightened
up.* Q. *You straightened up and then what happened?* A.
*I was hit.* . . . Q. And at the time that this, or that you
were hit, which way were you facing? A. Well, I got
straightened up— I was practically facing the east, the
northeast, or something like that, right at the time of the
accident."

E. W. Clement, who was driving the machine of the defend-
ant when the accident occurred, testified that the latter had
requested him to operate the automobile, and he thereupon
took the place of the driver and started out on the Maxwell
road; that, as he approached the place in the road where
the plaintiff's truck was standing, he diminished the speed
of his machine to twelve miles per hour; that he observed
back of the truck "some grass and boards along there where
someone had been stuck there, and I gave the machine a
little gas so as not to get stuck"; that as he hit and passed
the plaintiff he was going at the rate of fifteen miles an
hour. Clement said that there was on the defendant's ma-

chine an electric horn, and in one instance in his examination he stated that he gave no signal warning of his approach as he neared the truck and in another instance declared that he did not remember whether he did or not.

Ernest Tennant, the young man mentioned above as having been with the plaintiff at the time of the mishap, testified that he was on the ground standing close to the truck and on the south side thereof when he first observed the defendant's machine, then about ten or twelve feet from the truck, turning to pass on the side he was standing on; that the defendant's car was then traveling at about the rate of ten or twelve miles an hour; that, upon seeing said car, he jumped on the running-board of the truck; that defendant's car would have struck him had he not jumped on the running-board of the truck, as said car was only two feet from the truck's running-board when it passed the truck. He saw the plaintiff struck and knocked to the ground by defendant's car. The witness said he did not know but merely thought that the plaintiff stepped away from the truck into the road to pick up the tin hood.

[3] The above statement of the testimony presented by the plaintiff is sufficient to confirm our previous declaration that the case, as made by the evidence, was one entirely for decision by the jury, or, in other words, that the evidence is of such a character as to forbid the conclusion, as a matter of law, that the verdict is without enough evidential backing to support it.

In their brief, counsel for the defendant claim that the evidence without conflict shows that, even if the defendant was negligent in the manner in which his car passed the truck, the plaintiff, having, so it is asserted, stepped out into the road in front of the car, was thereby himself guilty of negligence without the existence or commission of which the accident and consequent injuries to him would and could not have occurred. But it is only necessary to read the testimony of plaintiff to convince the candid mind that counsel are mistaken in their hypothesis. The plaintiff, as will be noted, plainly testified that he merely stooped down and picked up the hood without moving from his position near the truck—so near that his body was against the truck—and that he had picked up the hood and himself had straightened up before the defendant's car struck him. There is nothing

in that statement or testimony which is inherently wanting in verity and the jury had the right to believe it to be a correct account of how the accident happened. Indeed, the plaintiff's testimony would seem to be borne out by the obvious proposition that if he had stepped out into the road and in front of the defendant's car and was in that position when it passed the truck, he would have been struck in other parts of his body, and in all probability have sustained fatal injuries.

That the driver of the defendant's car was very careless in the act of passing the truck seems to be quite manifest. There was even under ordinary or normal conditions, according to the evidence, hardly enough room for two cars to pass each other at the point on the road where the accident happened, and, with the plaintiff standing on the ground near his truck on the side thereof on which the defendant's car passed it, it should have occurred to the driver of the defendant's car that the utmost care should be exercised in the attempt to pass the truck. But the driver of said car, in passing the truck, as stated, did not appear to exercise the care which the situation would seem to have suggested to a reasonably prudent person, having regard for the rights and the protection of others, for, in the place of stopping as he approached the truck at the rate of twelve miles an hour, and considering how he could pass the truck without endangering the limbs or perhaps the life of plaintiff, he failed to give the usual warning of his approach as he neared the truck and gave his car more gas as he neared the hind end of the truck and thus speeded it up to a rate of fifteen miles an hour as he passed the plaintiff. This is, at any rate, what the jury could well and justly have concluded from the evidence, as undoubtedly it did so conclude.

But we may go further and declare that, under the circumstances of this case, the jury would have found support for finding that, if they had been required to find that the plaintiff was in the act of picking up the hood when he was struck, having for that purpose stepped away from his position at or near the truck upon observing the near and sudden and unheralded approach of the defendant's car, he was not legally culpable under the doctrine laid down in Shearman and Redfield on Negligence, section 89, and approved

and applied in such cases as *Schneider* v. *Market St. Ry. Co.*, 134 Cal. 482, 490, [66 Pac. 734], and *Stapp* v. *Madera Canal & Irr. Co.*, 34 Cal. App. 41, 51, 52, [166 Pac. 823, 827], as follows: [4] ''In cases where a party is suddenly put in a position of peril by the negligent act of another, without sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an unwise choice, under this disturbing influence, although if his mind had been clear, he ought to have done otherwise. This is especially true if the peril is caused by the defendant's fault.'' We are, however, firmly of the opinion that the jury could justly have found, as we may assume that they did find, that the accident occurred as the plaintiff described it, hence further consideration of the rule last referred to may be waived.

It may be added that the amount awarded the plaintiff as damages does not appear to be out of proportion to the injuries and the damage sustained by him. Several different bones in his right leg were severely fractured and the physicians testified, as above suggested, that he would suffer a permanent handicap by reason thereof.

The judgment is affirmed.

Burnett, J., and Nicol, P. J., *pro tem.*, concurred.